IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br> v.<br><br>THIRD POINT OFFSHORE FUND, LTD.,<br>THIRD POINT ULTRA, LTD.,<br>THIRD POINT PARTNERS QUALIFIED<br>L.P., and THIRD POINT LLC,<br><br>      Defendants. | Civil Action No.  15-1366 |

## FINAL JUDGMENT

WHEREAS, Plaintiff United States of America filed its Complaint on August 24, 2015, alleging that Defendants Third Point Offshore Fund, Ltd., Third Point Ultra, Ltd., and Third Point Partners Qualified L.P. (collectively, "Third Point Funds") violated Section 7A of the Clayton Act (15 U.S.C. § 18a, commonly known as the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act")), and Plaintiff and Defendants Third Point Funds and Third Point LLC (collectively, "Defendants"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against, or any admission by, any party regarding any such issue of fact or law;

AND WHEREAS Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

NOW, THEREFORE, before any testimony is taken, and without trial or adjudication of any issue of fact or law, and upon the consent of the parties, it is ORDERED, ADJUDGED AND

1

DECREED:

## I.   JURISDICTION

This Court has jurisdiction over the subject matter of this action.  The Defendants consent

solely for the purpose of this action and the entry of this Final Judgment that this Court has

jurisdiction over each of the parties to this action and that the Complaint states a claim upon

which relief can be granted.

## II.   DEFINITIONS

As used in this Final Judgment:

(A)    "Abandonment" means a statement that Defendants are not pursuing Board or
Management Representation.

(B)     "Board or Management Representation" means being a candidate for, or member
of, the board of directors or chief executive officer of the relevant Issuer.

(C)    "Board or Management Slate" means a Person or a group of Persons for possible
Board or Management Representation.

(D)    "Covered Acquisition" means an acquisition of Voting Securities of an Issuer that
is subject to the reporting and waiting requirements of the HSR Act, 15 U.S.C. § 18a, and that is
not otherwise exempt from the requirements of the HSR Act, but for which Defendants have not
reported under the HSR Act, in reliance on the exemption pursuant to Section (c)(9) of the HSR
Act, 15 U.S.C. § 18a(c)(9) ("Exemption").

(E)    "Flat Exemption" means a modification to the Exemption or the regulations that
implement the Exemption to exempt from the reporting requirements of the HSR Act the
acquisition of Voting Securities of an Issuer by any Acquiring Person, or by an Acquiring Person
who is not a competitor of the Issuer, on the sole basis that the acquisition results in the

Acquiring Person's holding less than a specified percentage of the outstanding Voting Securities of the Issuer.

(F)     "Issuer" means a legal entity that issues Voting Securities.

(G)     "Person" means any natural person.

(H)     "Third Parties" means any Person, partnership, joint venture, firm, corporation, association, trust, unincorporated organizations, or other business, and any subsidiaries, divisions, groups or affiliates thereof, that are not Defendants or a relevant Issuer.

(I)     "Third Point LLC" means Defendant Third Point LLC, a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 390 Park Avenue, 19th Floor, New York, NY 10022.

(J)     "Third Point Management" means the chief executive officer of Third Point LLC and/or a Person who has the authority to act for Third Point LLC with respect to Board or Management Representation.

(K)     "Third Point Offshore Fund, Ltd." means Defendant Third Point Offshore Fund, Ltd., an offshore fund organized under the laws of the Cayman Islands, with its registered office at Walkers, 190 Elgin Avenue, George Town, Grand Cayman KY1-9001, Cayman Islands.

(L)     "Third Point Partners Qualified L.P." means Defendant Third Point Partners Qualified L.P., a limited partnership organized under the laws of the State of Delaware, with its principal place of business at 390 Park Avenue, 19th Floor, New York, NY 10022.

(M)     "Third Point Ultra, Ltd." means Defendant Third Point Ultra, Ltd., an offshore fund organized under the laws of the British Virgin Islands, with its registered office at Walkers Chambers, 171 Main Street, P.O. Box 92, Road Town, Tortola, British Virgin Islands.

(N)     Other capitalized terms have the meanings as defined in the HSR Act and

Regulations promulgated thereunder, 16 C.F.R. §§ 801-803.

### III. APPLICABILITY

This Final Judgment applies to all Defendants, including each of their directors, officers, managers, agents, employees, parents, subsidiaries, successors and assigns, all in their capacities as such, and to all other Persons and entities who are in active concert or participation with any of the foregoing with respect to conduct prohibited in Paragraph IV when the relevant Persons or entities have received actual notice of this Final Judgment by personal service or otherwise.

### IV. PROHIBITED CONDUCT

Defendants are enjoined from making, directly or indirectly, a Covered Acquisition, without filing and observing the waiting period as required by the HSR Act, 15 U.S.C. § 18a, if: (1) at the time Defendants make such Covered Acquisition, or (2) during the four (4) months preceding that time, as applicable, Defendants:

    (A)    Nominated a candidate for the board of directors of such Issuer;

    (B)    Proposed corporate action requiring shareholder approval with respect to such Issuer;

    (C)    Solicited proxies with respect to such Issuer;

    (D)    Have, or are an Associate of an entity that has, a controlling shareholder, director, officer, or employee who is simultaneously serving as an officer or director of such Issuer;

    (E)    Are competitors of such Issuer;

    (F)    Have done any of the activities identified in Paragraphs IV.A.–IV.D. with respect to, or are a competitor of, any entity directly or indirectly controlling such Issuer;

    (G)    Inquired of a Third Party as to his or her interest in Board or Management Representation and did not later engage in Abandonment and communicate such Abandonment

to the Third Party, unless Defendants can show that such activity occurred without the knowledge of Third Point Management;

(H)     Sent a written communication to, or initiated an oral communication with, the relevant Issuer regarding Board or Management Representation by Persons employed by, affiliated with, or advanced by Defendants and did not later engage in Abandonment and communicate such Abandonment to the relevant Issuer, unless Defendants can show that such activity occurred without the knowledge of Third Point Management; or

(I)     Assembled in writing a Board or Management Slate if Defendants were acting through, instructed by, or with the knowledge of Third Point Management and did not later engage in Abandonment.

## V.  COMPLIANCE

(A)     Defendants shall maintain a compliance program that shall include designating, within thirty (30) days of the entry of this Final Judgment, a Compliance Officer with responsibility for achieving compliance with this Final Judgment.  The Compliance Officer shall, on a continuing basis, supervise the review of current and proposed activities to ensure compliance with this Final Judgment.  The Compliance Officer shall be responsible for accomplishing the following activities:

(1)     Distributing, within thirty (30) days of the entry of this Final Judgment, a copy of this Final Judgment to any Person who has responsibility for or authority over acquisitions by Defendants of Voting Securities;

(2)     Distributing in a timely manner a copy of this Final Judgment to any Person who succeeds to a position described in Paragraph V.A.1.;

(3)     Obtaining within sixty (60) days from the entry of this Final Judgment,

and once within each calendar year after the year in which this Final Judgment is entered during the term of this Final Judgment, and retaining for the term of this Final Judgment, a written certification from each Person designated in Paragraphs V.A.1. and V.A.2. that he or she:  (a) has received, read, understands, and agrees to abide by the terms of this Final Judgment; (b) understands that failure to comply with this Final Judgment may result in conviction for criminal contempt of court; and (c) is not aware of any violation of the Final Judgment; and

(4)     Providing written instruction, within sixty (60) days from the entry of this Final Judgment, and once within each calendar year after the year in which this Final Judgment is entered during the term of this Final Judgment, to all employees of Third Point who are not Third Point Management:  (a) not to make an inquiry of a Third Party, as described in Paragraph IV.G., or a communication with an Issuer, as described in Paragraph IV.H., without the authorization of Third Point Management; and (b) that if, without such authorization, such employee engages in an activity that may qualify as an inquiry or communication described in Paragraphs IV.G. or H., respectively, such employee shall report the event to the Compliance Officer.

(B)     Within sixty (60) days of the entry of this Final Judgment, Defendants shall certify to Plaintiff that they have (1) designated a Compliance Officer, specifying his or her name, business address and telephone number; and (2) distributed the Final Judgment in accordance with Paragraph V.A.1.

(C)     On or before November 30, 2016, and on or before November 30th (or, if November 30th is not a business day, the next business day) each year thereafter during the term

of this Final Judgment, Defendants shall file with Plaintiff a statement (the "Compliance

Report") as to the fact and manner of their compliance with the provisions of Paragraphs IV and

V during the year preceding September 30th of the year in which the Compliance Report is filed

(the "Reporting Period"). This Compliance Report shall also contain (1) the Issuer and date of

each Covered Acquisition during the Reporting Period where a Defendant held the relevant

Voting Securities for more than seven (7) days; and (2) a written statement containing the

following information regarding all instances, if any, of events during the Reporting Period

where a non-Third Point Management employee made an inquiry of a Third Party, as described

in Paragraph IV.G., or a communication with an Issuer, as described in Paragraph IV.H., without

the authorization of Third Point Management, and as reported to the Compliance Officer: (i) the

non-Third Point Management employee involved; (ii) the Issuer; and (iii) the date such inquiry

or communication occurred.

      (D)     If any of Defendants' directors or officers or the Compliance Officer learns of any

violation of this Final Judgment, Defendants shall within ten (10) business days make a

corrective filing under the HSR Act with respect to the relevant Covered Acquisition.

VI. PLAINTIFF'S ACCESS AND INSPECTION

      (A)     For the purpose of determining or securing compliance with this Final Judgment,

and subject to any legally recognized privilege, duly authorized representatives of the United

States Department of Justice shall, upon written request of a duly authorized representative of the

Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to

Defendants, be permitted:

            (1)     Access during Defendants' office hours to inspect and copy, or at

            Plaintiff's option, to require Defendants to provide copies of all records and

7

documents in their possession or control relating to any matters contained in this Final Judgment; and

(2)    To interview, either informally or on the record, Defendants' directors, officers, employees, agents or other Persons, who may have their individual counsel present, relating to any matters contained in this Final Judgment.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

(B)    Upon written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

(C)    No information or documents obtained by the means provided in this Final Judgment shall be divulged by the Plaintiff to any person other than an authorized representative of the executive branch of the United States or of the Federal Trade Commission, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

(D)    If, at the time information or documents are furnished by Defendants to Plaintiff, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1) of the Federal Rules of Civil Procedure," then the United States shall give ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding) to which Defendants are not a party.

8

## VII.    RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify or terminate any of its provisions, to enforce compliance, and to punish any violations of its provisions.

## VIII.    EXPIRATION OF FINAL JUDGMENT

This Final Judgment shall expire five (5) years from the date of its entry, except that, if, during the term of this Final Judgment, the Exemption is replaced by a Flat Exemption, then the Final Judgment shall expire on the date that the Flat Exemption is effective.

## IX. COSTS

Each party shall bear its own costs.

## X. PUBLIC INTEREST DETERMINATION

The entry of this Final Judgment is in the public interest.


DATED:   December 18, 2015


                                   Court approval subject to the
                                   Antitrust Procedures and Penalties Act,
                                   15 U.S.C. § 16


                                   *Ketanji Brown Jackson*
                                   United States District Judge